■ CAPITALAND UNITED SOCCER CLUB, INC., Plaintiff, and GEORGE KELESHIAN et al., Respondents, v CAPITAL DISTRICT SPORTS & ENTERTAINMENT, INC., et al., Respondents, and AMERICAN INDOOR SOCCER ASSOCIATION, INC., Doing Business as NATIONAL PROFESSIONAL SOCCER LEAGUE, et al., Appellants. [604 NYS2d 998] —Mahoney, J. Appeal from that part of an order of the Supreme Court (Keniry, J.), entered April 13, 1992 in Albany County, which partially denied motions by defendants American Indoor Soccer Association, Inc. and Steve Paxos to dismiss the complaint and all cross claims against them.

In 1990, plaintiff Capitaland United Soccer Club, Inc. (hereinafter CUSC) secured a franchise from defendant American Indoor Soccer Association, Inc. (hereinafter AISA) whereby its professional indoor soccer team, the New York Kick, could participate in the AISA league. Under the franchise agreement, CUSC, like all franchisees, received 20 shares of AISA stock and, in addition to paying a franchise fee, was required to post a $100,000 irrevocable letter of credit to guarantee its performance of certain obligations under the agreement and under AISA's bylaws. Insofar as is relevant here, two of the numerous obligations were to conduct operations as an active soccer team and to play all scheduled league games. In addition, the bylaws also provided that the agreement was to be governed by Ohio law and that any litigation arising out of the agreement was to be commenced in the Ohio Common Pleas Court. The letters of credit were obtained by five of CUSC's individual officers.

The New York Kick made its league debut in the 1990-1991 season. Unfortunately, the venture proved to be less than profitable and halfway through the season CUSC sought to sell the team. Following negotiations, it entered into an asset purchase agreement with defendant Capital District Sports & Entertainment, Inc. (hereinafter CDS&E) to sell both the team and the franchise rights. Under this agreement, CDS&E paid certain cash sums, executed two promissory notes and was obligated by a day certain to obtain and forward substitute letters of credit to AISA. Thereafter, problems developed. CDS&E failed to pay the promissory notes as they came due and did not obtain substitute letters of credit. In addition, in September 1991, it announced that it would not field a team for the 1991-1992 season. Perceiving this latter action to be a

breach of the underlying franchise agreement and bylaws, AISA indicated that it would enforce its rights by calling in the outstanding letters of credit to compensate it for damages incurred by failure of New York Kick to participate in the league. Moreover, because CDS&E had not obtained substitute letters of credit, the draw was to come from CUSC's original letters of credit.

This prompted CUSC and its individual officers (hereinafter collectively referred to as plaintiffs) to commence the instant action against CDS&E, its president Joseph O'Hara, AISA and its president Steve Paxos. While plaintiffs' claims against CDS&E and O'Hara were limited essentially to suit on the notes and for specific performance of the asset purchase agreement, their claims against AISA and Paxos were more complex. Arguing that the initial franchise agreement violated various sections of the General Business Law relating to franchise sales, plaintiffs sought $56,000 in damages representing the amount paid for the franchise, rescission of the franchise agreement, cancellation of the letters of credit and a permanent injunction enjoining AISA and Paxos from drawing on the letters of credit. In addition, plaintiffs sought $150,000 damages as against all defendants for allegedly conspiring to coerce and defraud plaintiffs into paying certain sums of money to CDS&E under the asset purchase agreement. In their answer, CDS&E and O'Hara interposed various cross claims against AISA and Paxos. The first two sounding in fraud and negligence respectively were based upon Paxos' failure to disclose that franchisees were shareholders in AISA. The third sought injunctive relief based upon violations of the Sherman Antitrust Act and the fourth sought an injunction barring AISA from enforcing any of its bylaws, rules or regulations against CDS&E on grounds that such are applicable only to shareholders and it had never become a shareholder.

Relying principally upon the forum selection clause contained in the bylaws, AISA and Paxos moved to dismiss the five causes of action interposed against them by plaintiffs and the cross claims interposed against them by CDS&E and O'Hara. Supreme Court concluded that although CUSC as a shareholder was bound by the forum selection clause, the individual plaintiffs, CDS&E and O'Hara were not shareholders and thus were not similarly bound. Being unpersuaded by the other arguments for dismissal advanced by AISA and Paxos, the court granted the motion only to the extent of dismissing that portion of the five causes of action interposed

by CUSC. The remaining portion of the five causes of action interposed by the individual plaintiffs along with the cross claims were sustained. AISA and Paxos appeal.

The gravamen of AISA's and Paxos' arguments on appeal concern the cross claims; more particularly, (1) that the forum selection clause contained in AISA's bylaws is binding on CDS&E, (2) Supreme Court lacks subject matter jurisdiction of the antitrust cross claims, and (3) the remaining fraud, negligence and injunctive relief cross claims fail to state causes of action or are barred by documentary evidence. Addressing the arguments seriatim, initially we agree with Supreme Court that factual questions exist with regard to whether CDS&E was bound by the forum selection clause contained in the AISA bylaws. Concededly, O'Hara executed an acknowledgment and acceptance form whereby CDS&E agreed to be bound by AISA's bylaws (which included the forum selection clause). However, inasmuch as the bylaws clearly establish that they apply only to shareholders of AISA, it seems evident that CDS&E's agreement to be bound by the bylaws was not *unconditional* but, rather, conditioned upon its becoming a shareholder. It being unclear from this record whether the stock transfer actually was accomplished, it cannot be said as a matter of law that the forum selection clause is binding on CDS&E.

We likewise agree that dismissal is inappropriate as to the antitrust cross claims and the cross claim for injunctive relief. With regard to the former, while jurisdiction of claims for affirmative relief based upon violations of the Federal antitrust statutes rests exclusively with the Federal courts, it is well settled that "State courts have jurisdiction in an action on a contract to consider the merits of a claim which alleges that the agreement before the court violates the Federal antitrust acts" *(Big Top Stores v Ardsley Toy Shoppe,* 64 Misc 2d 894, 905, *affd* 36 AD2d 582; *see, City Trade & Ind. v New Cent. Jute Mills Co.,* 25 NY2d 49; *General Aniline & Film Corp. v Bayer Co.,* 305 NY 479, 484-485). Dismissal of the latter cross claim is, in our view, premature at this juncture inasmuch as questions of fact exist with regard to whether CDS&E is a shareholder of AISA or otherwise bound by AISA's bylaws.

We reach a different conclusion with regard to the cross claims sounding in fraud and negligence, however. The fraud claim is based upon AISA's alleged nondisclosure of the franchisees' status as shareholders of AISA. While nondisclosure can be tantamount to an affirmative misrepresentation in

situations where the nondisclosing party has a duty to reveal information by virtue of a particular relationship or otherwise *(see, e.g., Koncelik v Abady,* 179 AD2d 942, 944), here no such relationship is alleged and there is no indication on this record that AISA otherwise had a duty to disclose CUSC's stock holdings. Accordingly, this claim must be dismissed. The negligence claim likewise must fail. The cross claims do not allege nor is there any basis for the imposition of a duty upon AISA which in this context simply was a third party who reviewed documents pursuant to the sale of a soccer franchise between two other parties.

As regards AISA's and Paxos' arguments relative to the causes of action interposed against them in the complaint, inasmuch as the complaint's seventh, eighth and tenth causes of action set forth allegations in favor of the individual plaintiffs that are distinct from CUSC's causes of action, we see no error in Supreme Court's refusal to dismiss these causes of action against the individual plaintiffs. The remaining arguments raised by AISA and Paxos in this regard are advanced for the first time on appeal and thus are unpreserved for review.

Crew III, J. P., Cardona, White and Casey, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied the motion of defendants American Indoor Soccer Association, Inc. and Steven Paxos to dismiss the first and second cross claims interposed against them by defendants Capital District Sports & Entertainment, Inc. and Joseph J. O'Hara; said motion granted and cross claims numbered first and second dismissed; and, as so modified, affirmed.